# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| **ESTATE OF DUSTYN HENRY, through Administrator Laura Barrett,**<br><br>Plaintiff,<br><br>vs.<br><br>**MIKE SCHWAB, individually and in his official capacity as a Probation/Parole Officer for the First Judicial District Department of Correctional Services,**<br><br>Defendant. | Civil No.: 6:18-cv-2090<br><br>**COMPLAINT**<br>**AND JURY DEMAND** |

**COME NOW,** the Plaintiffs, by and through their undersigned counsel, and for their causes of action, state as follows:

## PARTIES

1. Plaintiff Estate of Dustyn Henry is the estate established and administered according to, and functioning under, the probate laws of the State of Iowa, with Laura Barrett serving as the court-appointed Administrator, at all times material hereto.

2. Defendant Mike Schwab is believed to be a citizen and resident of Iowa and was serving as s a Probation/Parole Officer for the First Judicial District Department of Correctional Services at all times relevant to the events complained of herein.

## JURISDICTION AND VENUE

3. Jurisdiction of the Court is invoked under 28 U.S.C. §§ 1331 and 1343(a)(3).

4. All events and actions referenced in Complaint occurred in the Northern District of Iowa, therefore venue is proper under 28 U.S.C §1391(b)(1) - (2).

## FACTUAL ALLEGATIONS

5. For several years prior to December 15, 2016, Dustyn dealt with mental health issues including anxiety, depression, and bi-polar disorders.

6. Dustyn was subject to multiple voluntarily commitments.

7. Dustyn's mental health history included suicidal ideation, as well as threats and attempts to commit suicide.

8. In 2007, Dustyn pointed a gun at himself, resulting in a call to the Cresco Police Department.

9. A suicide attempt in 2014 resulted in his hospitalization at Mercy Hospital in Oelwein, Iowa.

10. Dustyn also suffered from substance abuse issues.

11. On July 14, 2015, Dustyn was ordered by the District Court for Buchanan County, Iowa into the custody of the First Judicial District Department of Correctional Services ("the District") for a period of probation following the grant of a deferred judgment.

12. The District placed Dustyn into its "Thinking for Change" group program.

13. The "Thinking for Change" program consists of a type of group psychotherapy termed cognitive behavioral therapy designed to change an individuals thoughts and behaviors used in part to address issues of "distorted" thinking and substance abuse.

14. On January 5, 2016, after admitting to a violation of probation terms, Dustyn was placed by the Buchanan County District Court in the West Union Residential Facility as part of his probation.

15. The West Union Residential Facility is controlled and operated by the District.

16. On January 20, 2016, the District Court for Fayette County, Iowa granted Dustyn a

deferred judgment in a separate matter, also placing him in the custody of the West Union Residential Facility for up to one year or until maximum benefit was obtained.

17. On February 2, 2016, Dustyn tested positive for marijuana and methamphetamines and admitted to their use days prior to entering the West Union Residential Facility.

18. On March 3, 2016, Dustyn did not attend a substance abuse appointment, tested positive for controlled substances, and admitted to using methamphetamine and a non-prescribed medical drug.

19. Dustyn again tested positive for controlled substances and admitted to using methamphetamine and a non-prescribed medical drug.

20. On May 8, 2016, Dustyn told Probation Officer Darrell Todd that he (Dustyn) could no longer stand being at West Union Residential Facility and if not released, he would either escape or kill himself.

21. PO Todd is a Probation/Parole Officer with the District.

22. Dustyn then stated if he successfully escaped, he would see his family, and then kill himself.

23. PO Todd contacted the West Union Police Department who took Dustyn to Palmer Luthern Hospital for a mental health evaluation.

24. Dustyn was subsequently voluntarily committed to Franciscan Skemp (Mayo) Hospital for mental evaluation.

25. While voluntarily committed, Dustyn had contact with PO Todd on May 11, 2016, which PO Todd considered to be obstructive behavior and verbally abusive.

26. On May 16, 2016, Dustyn was served with an arrest warrant for probation violations, resulting in his being transported from Franciscan Skemp (Mayo) Hospital to the

Fayette County Jail.

27. While incarcerated at the Fayette County Jail, Dustyn met with a counselor.

28. The counselor prescribed Dustyn anti-anxiety and anti-depression medications to address his mental health issues.

29. On June 1, 2016, Dustyn admitted the probation violations alleged against him before the Fayette County District Court, including those arising from the May 8, 2016 and May 11, 2016 interactions with PO Todd.

30. Based on these admissions, the Fayette County District Court revoked Dustyn's deferred judgment, imposed a suspended sentence and probation, with Dustyn placed in the District's custody with the requirement to reside at a residential treatment facility for up to one year or until maximum benefit was obtained.

31. On June 7, 2016, Dustyn again admitted the probation violations, including those arising from the May 8, 2016 and May 11, 2016 interactions with PO Todd, resulting in the Buchanan County District Court revoking his other deferred judgment.

32. Dustyn was sentenced to a 30-day jail term for contempt, served in the Buchanan County Jail.

33. The Buchanan County District Court kept Dustyn on probation, and ordered his placement at the Waterloo Residential Facility for up to one year or until maximum benefit was obtained.

34. The Waterloo Residential Facility is controlled and operated by the District.

35. Defendant Mike Schwab was Dustyn's supervising officer while Dustyn resided at the Waterloo Residential Facility.

36. Schwab had full and complete access to all records concerning Dustyn in the

Districts control and custody.

37. The District's records included PO Todd's court filings and other materials documenting Dustyn's behavior, mental state, and threats of suicide.

38. Upon entering the Waterloo Residential Facility, Dustyn was placed in the "psych" unit for approximately one month due to his threats of suicide.

39. While residing at the Waterloo Residential Facility, Dustyn attended mental health and substance abuse counseling.

40. Schwab knew Dustyn was attending this counseling.

41. Schwab knew of Dustyn's prior suicidal ideation and threats to kill himself should he continue to be held at a residential facility.

42. Dustyn's prescriptions for anti-anxiety and anti-depression medications ceased to be filled starting in November 2016 do to the loss of insurance from termination of employment.

43. Schwab knew Dustyn had been prescribed this medication.

44. Schwab knew Dustyn's prescriptions were not being filled beginning in November 2016 due to his no longer having insurance due to his employment being terminated.

45. Despite it being known Dustyn's prescriptions were not being filled, no action was taken by Schwab or the Waterloo Residential Facility to ensure Dustyn received his medications.

46. Dustyn was known by Schwab to be using controlled substances while residing at the Waterloo Residential Facility.

47. Dustyn would return to the Waterloo Residential Facility visibly under the influence of controlled substances.

48. Based on information and belief, the Waterloo Residential Facility had a policy, custom, or practice of taking residents known to be intoxicated to the Black Hawk County Jail,

which is located directly across the street, to be held while detoxing.

49. Despite it being known Dustyn was intoxicated upon his return to the Waterloo Residential Facility, he was not taken to the Black Hawk County Jail, in violation of policy, custom, and practice.

50. Despite being ordered to the Waterloo Residential Facility, Dustyn was able to see Randy and Brenda on a near daily basis.

51. Dustyn also had visitation with B.H. every other weekend, which was held at Randy and Brenda's home.

52. Dustyn kept his visitations with B.H., and they would play at Randy and Brenda's home for the hours of visitation they had.

53. Prior to his loss of employment in November 2016, Dustyn was regularly employed during his time at the Waterloo Residential Facility.

54. On December 14, 2016, Dustyn tested positive for controlled substances.

55. Dustyn was not taken to the Black Hawk County Jail to detox.

56. On December 15, 2016, at 8:44 a.m., Schwab filled a Report of Violation from Dustyn's use of controlled substances and loss of employment.

57. Schwab informed Dustyn of the Report of Violation, including that Schwab was seeking the revocation of his probation and imposition of the sentence of incarceration on both of Dustyn's cases.

58. In response to this news, Dustyn was despondent.

59. Despite knowing of Dustyn's suicidal ideations, mental health issues, and lack of medication, Schwab took no steps to keep Dustyn from committing self-harm after informing him of the Report of Violation.

60. Schwab knew Dustyn had a substantial risk of suicide.

61. Schwab made no effort to abate Dustyn's risk of suicide.

62. On December 16, 2016, Dustyn spoke with Randy by phone between 10:00 and 10:30 a.m.

63. Around 11:00 a.m., Dustyn spoke with his girlfriend by phone.

64. At approximately 12:18 a.m., Dustyn was observed in the lunch room of the Waterloo Residential Facility.

65. Dustyn left the lunch room and returned to his room.

66. Dustyn hung himself by the neck with a belt tied to a clothes hanger rack until death.

## CAUSES OF ACTION

### COUNT I
### CIVIL RIGHTS VIOLATION PURSUANT TO 42 U.S.C § 1983 – VIOLATION OF THE EIGHTH AND/OR FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION
### *Denial of Medical Care – Risk of Suicide*
### (*Against Defendant Schwab*)

67. Plaintiff repleads Paragraphs One (1) through Sixty-Six (66) as if fully set forth herein.

68. At all times material hereto, Schwab's actions and/or omissions were made under the color of authority and law as a Probation/Parole Officer for the First Judicial District Department of Correctional Services.

69. On December 15, 2018, Schwab violated Dustyn's clearly established constitutional rights when they failed to provide adequate treatment for his serious medical need, specifically his risk of suicide.

70. On December 15, 2018, Dustyn was in the custody of the First Judicial District

7

Department of Correctional Services.

71. Schwab was the officer responsible for Dustyn's supervision.

72. On December 15, 2018, Dustyn's was suffering from a serious medical need, specifically suicidal ideation/risk of suicide.

73. Dustyn being at a substantial risk of suicide was obvious on December 15, 2016.

74. Based on his personal observations of Dustyn, as well as information which had been communicated to him, Schwab had actual knowledge of Dustyn's serious medical need.

75. Defendants' actions and/or omissions in failing to provide adequate medical treatment shows a deliberate indifference to and/or reckless disregard for Dustyn's civil and constitutional rights by failing to provide adequate medical treatment for Ron's serious medical needs.

76. Schwab did not take reasonable steps to address Dustyn's known and obvious risk of suicide.

77. Schwab's actions and/or omissions regarding Dustyn's risk of suicide on December 15, 2016 were unreasonable under the circumstances.

78. Schwab's actions and/or omissions were willful, wanton, unlawful, and in gross disregard of Dustyn's civil rights, justifying an award of punitive damages.

79. Schwab was aware that his conduct, individually and collectively, put Dustyn at risk of serious, immediate, and proximate harm, including death.

80. As a direct and proximate result of the failure of Schawb's to act to and provide adequate medical care, the Estate of Dustyn Henry has and will in the future suffer and incur the following damages:

    a. Deprivation of constitutional rights;

b. Consequential damages;

   c. Physical pain, mental and emotional distress and suffering including loss of mind and body;

   d. All actual and compensatory damages including, but not limited to, past and present pain and suffering and medical expenses;

   e. Loss of income and earning capacity; and,

   f. All expenses associated with the prosecution of the instant action including, but not limited to, court costs, anticipated discovery expenses, anticipated expert expenses, and legally allowable judgment interest.

**WHEREFORE,** the Plaintiff, Estate of Dustyn Henry, prays for judgment against the aforementioned Defendant as follows:

   a. Actual, Compensatory, Consequential, and all other allowable damages against Defendants, with interest, in an amount as yet to be determined;

   b. Compensation for violation of his constitutional rights, loss of income and earning capacity, humiliation, degradation, public ridicule, loss of personal and professional reputation, and emotional distress;

   c. Physical pain, mental and emotional distress and suffering including loss of mind and body;

   d. Plaintiff's cost in this action, including but not limited to reasonable attorney's fees and costs pursuant to 42 U.S.C. 1988;

   e. Punitive damages; and,

   f. Any other damages allowed by federal or state law or which the Court deems just and equitable.

## **JURY DEMAND**

**COME NOW**, the Plaintiff, Estate of Dustyn Henry, who hereby demands a trial by jury with regard to the above-captioned matter.

**PARRISH KRUIDENIER DUNN BOLES
GRIBBLE GENTRY BROWN & BERGMANN L.L.P.**

BY: _/s/ Matthew Boles_

    Matthew M. Boles           AT0001037
    Adam C. Witosky            AT0010436
    2910 Grand Avenue
    Des Moines, Iowa 50312
    Telephone: (515) 284-5737
    Facsimile: (515) 284-1704
    Email: mboles@parrishlaw.com
           awitosky@parrishlaw.com
    **ATTORNEYS FOR PLAINTIFFS**