# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| ESTATE OF DUSTYN HENRY, through Administrator Laura Barrett, BRENDA HENRY, RANDY HENRY, and B.H., through Next Friend Laura Barrett,<br><br>    Plaintiffs,<br><br>vs.<br><br>MIKE SCHWAB, individually and in his official capacity, and STAE OF IOWA,<br><br>    Defendants. | No. 6:18-CV-2090<br><br>**MEMORANDUM OPINION AND ORDER** |

_____

This matter is before the Court on defendants Mike Schwab and the State of Iowa's ("defendants") Partial Motion to Dismiss. (Doc. 27). On July 12, 2019, the Estate of Dustyn Henry, along with Brenda Henry, Randy Henry, and B.H. ("plaintiffs") filed their Second Amended Complaint and Jury Demand ("complaint") against defendants. (Doc. 25). Defendants timely moved to dismiss Counts II-IV of the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1), or in the alternative, Federal Rule of Civil Procedure 12(b)(6). (Doc. 27). Plaintiffs timely resisted the motion (Doc. 28), and defendants timely filed a reply (Doc. 29). For the following reasons, defendants' motion is **granted**.

## I.  *BACKGROUND*

The Court, under Rule 12(b), accepts plaintiffs' factual allegations in the complaint as true for purposes of this motion. The plaintiffs in this case are the Estate of Dustyn Henry ("decedent"), decedent's mother and father, Brenda Henry and Randy Henry, and B.H., decedent's minor child. (Doc. 25, at 1-2). Defendant Mike Schwab was

decedent's supervising probation or parole officer while plaintiff resided at the Waterloo Residential Facility ("facility") by order of the Iowa District Court for Buchanan County. (*Id.*, at 2, 6). The State of Iowa ("State") runs the facility through the First Judicial District Department of Correctional Services. (*Id.*, at 2).

Decedent had a history of mental health and substance abuse issues in the years leading up to his death. (*Id.*, at 2-3). Defendants knew about, or had access to information regarding, decedent's history of substance abuse and mental health issues while he resided at the facility. (*Id.*, at 6). While at the facility decedent was terminated from his job, which caused decedent to lose his health insurance. (*Id.*, at 6-7). As a result of decedent's loss of insurance, decedent's prescriptions for anti-anxiety and anti-depression medication stopped being filled. (*Id.*). Defendants took no action to ensure that decedent got his medications after decedent lost his insurance. (*Id.*, at 7). Defendants knew decedent was using controlled substances while residing at the treatment facility, and defendants failed to follow their normal policy of taking residents who were intoxicated to the nearby jail to detox. (*Id.*).

On December 15, 2016, Mr. Schwab filed a Report of Violation of the terms of decedent's probation due to decedent's loss of employment and use of controlled substances. (*Id.*, at 8). The Report of Violation sought to revoke decedent's probation and have decedent sent to prison. (*Id.*). Decedent was "despondent" when he learned of the Report of Violation. (*Id.*). Despite knowledge of decedent's mental health issues and lack of prescribed medication, defendants took "no steps to keep [decedent] from committing self-harm after informing him of the Report of Violation." (*Id.*). On December 16, 2016, decedent committed suicide by hanging himself from the clothes hanger rack in his room. (*Id.*, at 8-9). Defendants knew that the clothes hanger racks in the facility were capable of supporting a person's weight without collapsing due to prior suicides by hanging in the facility. (*Id.*, at 9). Defendants failed to utilize widely

available clothes hanging equipment designed to prevent suicide by hanging. (*Id.*). Plaintiffs assert various claims for money damages resulting from decedent's death. (*Id.*, at 9-15).

Plaintiffs brought a four-count complaint alleging: 1) civil rights violations under 42 U.S.C. § 1983; 2) wrongful death - negligence; 3) parental loss of child consortium; and 4) child loss of parental consortium. (*Id.*, at 9-14). In response, defendants moved to dismiss Counts II-IV based on lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), and in the alternative, for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). (Doc. 27, at 1).

## II. APPLICABLE LAW

### A. *Federal Rule of Civil Procedure 12(b)(1) Standard*

"Questions of sovereign immunity fall squarely within the province of a 12(b)(1) motion because, if immunity is present for a claim, the Court lacks subject matter jurisdiction over that claim." *Mills v. Iowa Bd. of Regents*, 770 F. Supp. 2d 986, 990 (S.D. Iowa 2011) (citing *Mumford v. Godfried*, 52 F.3d 756, 758 (8th Cir. 1995); *Feltes v. State*, 385 N.W.2d 544, 546-47 (Iowa 1986)). Thus, the Court will analyze defendants' motion as one to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1), not as a motion to dismiss for failure to state a claim under Rule 12(b)(6).

Federal Rule of Civil Procedure 12(b)(1) provides that a party may assert the defense of lack of subject-matter jurisdiction by motion and that motion "must be made before pleading if a responsive pleading is allowed." The Eighth Circuit Court of Appeals has explained that:

> A court deciding a motion under Rule 12(b)(1) must distinguish between a "facial attack" and a "factual attack." In the first instance, the court restricts itself to the face of the pleadings . . . and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6). The general rule is that a complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove

3

> no set of facts in support of his claim which would entitle him to relief." In a factual attack, the court considers matters outside the pleadings . . . and the non-moving party does not have the benefit of 12(b)(6) safeguards.

*Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990) (citations omitted). "[A] facial attack [is] one 'based on the complaint alone, or on the complaint supplemented by undisputed facts evidenced in the record.'" *Younie v. City of Hartley*, 97 F. Supp. 3d 1058, 1060 (N.D. Iowa 2015) (quoting *Osborn*, 918 F.2d at 730). Defendants' Partial Motion to Dismiss presents a facial attack on Counts II-IV.

When evaluating a facial attack on jurisdiction, the court must "consider[] only the materials that are 'necessarily embraced by the pleadings and exhibits attached to the complaint.'" *Carlsen v. GameStop, Inc.*, 833 F.3d 903, 908 (8th Cir. 2016) (quoting *Cox v. Mortgage Elec. Registration Sys., Inc.* 685 F.3d 663, 668 (8th Cir. 2012). The 12(b)(6) protections applicable to facial attacks under Rule 12(b)(1) include "accepting all the factual allegations of the complaint as true and construing them in the light most favorable to [the non-movant]." *Gross v. Weber*, 186 F.3d 1089, 1090 (8th Cir. 1999).

### B. *Subject Matter Jurisdiction*

United States District Courts have original subject-matter jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. If a district court has original jurisdiction over a civil action, the court also has "supplemental jurisdiction over all other claims that are so related to claims in the action . . . that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). To be considered part of the same case or controversy, "[t]he state and federal claims must derive from a common nucleus of operative fact." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966). "A plaintiff's claims derive from a common nucleus of operative fact if the 'claims are such that he would ordinarily be expected to try them all in one judicial proceeding.'"

*OnePoint Solutions, LLC v. Borchert*, 486 F.3d 342, 350 (8th Cir. 2007) (quoting *Gibbs*, 383 U.S. at 725.)

## III. DISCUSSION

### A. Partial Motion to Dismiss

Defendants argue that the Court should grant their partial motion to dismiss three of the four counts in the complaint "for lack of federal subject matter jurisdiction [because] [d]efendants' Eleventh Amendment sovereign immunity applies to claims under the Iowa Tort Claims Act." (Doc 27-1 at 2). The complaint asserts four counts: 1) civil rights violations under Title 42 United States Code Section 1983 against Mr. Schwab individually; 2) wrongful death negligence against Mr. Schwab individually and in his official capacity and against the State under Iowa common law; 3) parental loss of child consortium against both defendants under Iowa Code Section 613.15A; and 4) child loss of parental consortium against both defendants under Iowa Code Section 613.15. In the present motion, defendants seek to dismiss Counts II-IV. Subject matter jurisdiction over Count I, plaintiffs' Section 1983 claim, is not at issue because it "arises under . . . the law[ ]. . . of the United States." 28 U.S.C. § 1331. At issue is the Court's supplemental jurisdiction over Counts II-IV, which plaintiffs assert under Iowa law.

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. "Although by its terms the [Eleventh] Amendment applies only to suits against a State by citizens of another State, our cases have extended [its] applicability to suits by citizens against their own States." *Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 363 (2001) (citations omitted). Indeed, "[t]he ultimate guarantee of the Eleventh Amendment is that nonconsenting States may not be sued by private individuals in federal court." *Id.* (citations omitted).

Although the Eleventh Amendment only explicitly discusses states' immunity from suit in federal court, states are also "immun[e] from private suit in their own courts." *Alden v. Maine*, 527 U.S. 706, 754 (1999); *see also Montandon v. Hargrave Constr. Co.*, 130 N.W.2d 659, 660 (Iowa 1964) (noting that historically the State has been immune from suit "[e]xcept where consent has been given by the legislature.")). The Supreme Court "sometimes refer[s] to the States' immunity from suit as 'Eleventh Amendment immunity.' The phrase is convenient shorthand but something of a misnomer, for the sovereign immunity of the States neither derives from, nor is limited by, the terms of the Eleventh Amendment." *Alden*, 527 U.S. at 713.

There are two circumstances under which an individual may sue a state in federal court: 1) where Congress "authorize[s] such a suit in the exercise of its power to enforce the Fourteenth Amendment"; and 2) where "a State [ ] waive[s] its sovereign immunity by consenting to suit." *Coll. Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999). "A State [ ] may choose to waive its immunity in federal court at its pleasure." *Sossamon v. Texas*, 563 U.S. 277, 284 (2011) (citing *Clark v. Barnard*, 108 U.S. 436, 447-48 (1883). In order to do so, "[a] Sate's consent to suit must be 'unequivocally expressed' in the text of the relevant statute." *Id.* (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984)). "[A] waiver of sovereign immunity 'will be strictly construed, in terms of its scope, in favor of the sovereign.'" *Id.* at 285 (quoting *Lane v. Peña*, 518 U.S. 187, 192 (1996)). "[F]or example, a State's consent to suit in its own courts is not a waiver of its immunity from suit in federal court." *Id.* (citing *Coll. Sav. Bank*, 527 U.S. at 676).

The State partially waives its Eleventh Amendment sovereign immunity as a part of Iowa Code Chapter 669 – the Iowa Tort Claims Act ("ITCA"), which allows suits to be brought against the State, subject to certain limitations, on "claims." IOWA CODE § 669.5 The ITCA defines "claims" as follows:

a. Any claim against the state of Iowa for money only, on account of damage to or loss of property or on account of personal injury or death, caused by the negligent or wrongful act or omission of any employee of the state while acting within the scope of the employee's office or employment, under circumstances where the state, if a private person, would be liable to the claimant for such damage, loss, injury, or death.

b. Any claim against an employee of the state for money only, on account of damage to or loss of property or on account of personal injury or death, caused by the negligent or wrongful act or omission of any employee of the state while acting within the scope of the employee's office or employment.

IOWA CODE § 669.2(3). The ITCA defines "[a]cting within the scope of the employee's office or employment" as "acting in the employee's line of duty as an employee of the state." IOWA CODE § 669.2(1). The ITCA subsequently defines an "employee of the state" as "includ[ing] any one or more officers, agents, or employees of the state or any state agency." IOWA CODE § 669.2(4)(a).

For purposes of sovereign immunity, claims against the State's employees in their individual capacities for actions in the scope of the employees' employment are treated as suits against the State because the State may be vicariously liable for its employees' actions. *See* IOWA CODE § 669.5(2); *McGill v. Fish*, 790 N.W.2d 113, 117 (Iowa 2010). Similarly, this Court has recognized that, "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office . . . [a]s such, it is no different from a suit against the State itself." *Flugge v. Hollenbeck*, No. C16-2121-LTS, 2017 WL 2640674, at *4 (N.D. Iowa 2017) (quoting *Will v. Mich. Dept't of State Police*, 491 U.S. 58, 71 (1989)).

Plaintiffs' do not dispute that their claims against Mr. Schwab are subject to the ITCA, thus it does not appear that plaintiffs' dispute that Mr. Schwab was acting in the scope of his employment at all times relevant to this case. (*See* Doc. 28-1, at 2-4). Also,

plaintiffs allege, and the Court accepts as true, that "[Mr. Schwab] was serving as [ ] a Probation/Parole Officer for the First Judicial District Department of Correctional Services at all times relevant to the events complained of." (Doc. 25, at 2). Iowa Code Section 905.2 provides that each judicial district's department of correctional services "is a state agency for purposes of [the ITCA]." Thus, Mr. Schwab was, at all material times" an "employee of the state" pursuant to the ITCA.

Plaintiffs allege in Count I that "[Mr.] Schwab's actions and/or omissions were made under the color of authority and law as a Probation/Parole Officer for the First Judicial District Department of Correctional Services." (Doc. 25, at 9). The scope of actions taken "under color of law" is broader than actions within a state employee's "scope of employment." *Sampson v. Kofoed*, 8:07CV155, 2016 WL 7971575, at *15 (D. Neb. Mar. 30, 2016) (citing *Graham v. Sauk Prairie Police Comm'n*, 915 F.2d 1085, 1093 (7th Cir. 1990)) *rev'd and remanded sub nom. on other grounds Sampson v. Lambert*, 903 F.3d 798 (8th Cir. 2018). These two concepts, however, often overlap. *See id.; see also Roe v. Humke*, 128 F.3d 1213, 1215 (8th Cir. 1997) ("[A] public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." (quoting *West v. Atkins*, 487 U.S. 42, 49-50 (1988)).

Plaintiffs allege in Count II that Mr. Schwab and the State failed to monitor decedent properly, failed to notify appropriate personnel of decedent's mental state, failed to ensure decedent received and took prescribed medications, failed to secure decedent knowing he was detoxing, failed to promptly aid decedent when he was attempting suicide, and failed to install "breakaway" or safety closet rods in decedent's room. (Doc. 25, at 12-13). There is nothing in the record to indicate that Mr. Schwab had any duty to monitor or otherwise care for the decedent other than those imposed by his employment with the First Judicial District Department of Correctional Services. Plaintiffs further

8

allege that the actions and omissions outlined in Count II were the direct and proximate cause of the damages in Counts III and IV. (Doc. 25, at 14-15). Counts II-IV incorporate all prior allegations, including the allegation that Mr. Schwab acted "under the color of authority and law as a Probation/Parole Officer." (*Id.*, at 12, 14-15). Drawing all inferences in plaintiffs' favor from the facts alleged in the complaint, the Court finds that Mr. Schwab was acting within the scope of his employment for the purposes of evaluating Counts II-IV under the ITCA.

Section 669.4(3) of the ITCA provides that the State has waived sovereign immunity only "to the extent provided in this chapter." Section 669.4(1) provides exclusive jurisdiction in which a plaintiff can bring "claims" under the ITCA:

> The district court of the state of Iowa for the district in which the plaintiff is resident or in which the act or omission complained of occurred, or where the act or omission occurred outside of Iowa and the plaintiff is a nonresident, the Polk county district court has exclusive jurisdiction to hear, determine, and render judgment on any suit or claim as defined in this chapter.

IOWA CODE § 669.4. Thus, the ITCA only waives the States' sovereign immunity to allow for suits in the appropriate Iowa District Court, not a United States District Court.

There is no dispute that the State waived its sovereign immunity to some extent with respect to Counts II-IV. The important distinction, however, is whether the State's waiver permits plaintiffs to pursue Counts II-IV in this Court. Plaintiffs contend that because the administrative requirements of the ITCA have been met,[1] the State waived

---

[1] The ITCA requires certain administrative processes be exhausted before suit can be brought. Section 669.5 of the ITCA outlines when suit is permitted. In order to bring a claim under the ITCA, Section 669.5 requires that "the attorney general [make] final disposition of the claim." IOWA CODE § 669.5(1). In the alternative, "if the attorney general does not make final disposition of a claim within six months after the claim is made in writing . . . the claimant may . . . withdraw the claim . . . and begin suit." *Id.* Additionally, "[i]f the attorney general refuses to certify that a defendant was acting within the scope of the defendant's office or

9

its sovereign immunity in federal court and thus, this Court has supplemental jurisdiction over Counts II-IV.

Plaintiffs' argument relies on *Luncsford v. Nix*, a case in which the United States District Court for the Southern District of Iowa found that it had supplemental jurisdiction over a claim subject to the ITCA in addition to the plaintiff's Section 1983 claim. 848 F. Supp. 859, 860-61 (S.D. Iowa 1994).[2] In *Luncsford*, the court held that the plaintiff's state law claim was "so related to [the] claim on which [the] court [had] original jurisdiction [that] the two claims form[ed] part of the same case or controversy." *Id.* The court reasoned that "no federal provision allow[s] a state to take away a federal court's supplemental jurisdiction." *Id.*, at 861 (citing 28 U.S.C § 1367 (2012)). The court held "once the state has created a statute limiting its sovereign immunity it cannot limit the federal court's power to hear [the] case." *Id.* (citations omitted). Finally, the court concluded that holding any differently "would defeat the purposes of supplemental jurisdiction to promote expediency, efficiency, and fairness to the parties." *Id.*, (citing *Gibbs*, 383 U.S. at 726).

Defendants contend that a federal court's supplemental jurisdiction cannot override Eleventh Amendment sovereign immunity. (Doc. 29, at 2 (citing *Raygor v. Regents of Univ. of Minn.*, 534 U.S. 533, 540-42 (2002)). In *Raygor*, the Supreme Court held that

---

employment . . . the defendant may petition the court , with notice to the attorney general." *Id.*, at (2)(b). "Improper presentment of a claim has been considered a failure to exhaust one's administrative remedies, depriving the district court of subject matter jurisdiction. *Wilson v. Lamp*, 142 F. Supp.3d 793, 811 (N.D. Iowa 2015). The plaintiffs maintain and "[d]efendants do not dispute that [p]laintiffs exhausted their administrative remedies and may bring Iowa Tort Claims Act claims." (Doc. 29, at 1).

[2] The Court notes that the complaint does not specifically cite Section 1367 as grounds for jurisdiction over Counts II-IV. Rather than dismiss for that reason, the Court will presume that Plaintiffs intended to invoke Section 1367 in their complaint based on their citation to *Luncsford* and will rule accordingly.

supplemental jurisdiction under Section 1367(a) was not a Congressional abrogation of Eleventh Amendment sovereign immunity and "does not extend to claims against nonconsenting state defendants." *Raygor*, 535 U.S. at 542. Thus, if the State did not consent to suit in this Court, Section 1367 does not override its Eleventh Amendment sovereign immunity.

Accordingly, the Court turns to the scope of the State's waiver of its Eleventh Amendment sovereign immunity to determine if the State has consented to suit. "A waiver of sovereign immunity 'will be strictly construed, in terms of its scope, in favor of the sovereign.'" *Sossamon*, 563 U.S. at 285 (quoting *Lane*, 518 U.S. at 192). As an example, the Supreme Court noted that "a State's consent to suit in its own courts is not a waiver of its immunity from suit in federal court." *Id.* (citing *College Sav. Bank*, 527 U.S. at 676).

Defendants cite several cases from this Court, decided since *Luncsford*, establishing that the ITCA waives Iowa's sovereign immunity only as it applies to suit in its own state courts. *See Flugge*, 2017 WL 2640674, at *3 ("[T]he [C]ourt cannot find that § 669.4 provides an express waiver of Eleventh Amendment immunity to suits against the state *in federal court*.") (citing *Jacobsen v. Department of Transp.*, 332 F. Supp. 2d 1217, 1230 (N.D. Iowa 2004)); *Nunley v. Erdmann*, No. C14-4016-MWB, 2014 WL 5020253, at *7 (N.D. Iowa 2014) ("This court has recognized that '[t]he plain language of section 669.4 limits waiver of Iowa's sovereign immunity to lawsuits brought in Iowa state courts.'"(alteration in original) (quoting *Jacobsen*, 332 F. Supp. 2d at 1229-30)); *Tinius v. Carroll Cty. Sheriff Dep't*, 255 F. Supp. 2d 971, 985 (N.D. Iowa 2003) ("[A] state may waive its common law sovereign immunity under state law, without waiving its Eleventh Amendment immunity under federal law. This is precisely the situation with the [ITCA]."). The Court finds these cases to be persuasive. Thus, although the ITCA waives the State's sovereign immunity to suit under certain circumstances in Iowa's

district courts, the State has not consented to suit in federal court, and so this Court cannot exercise supplemental jurisdiction over plaintiffs' state law claims.

The Court's ruling is in line with other courts that have held that *Luncsford* is inconsistent with the Supreme Court's interpretation of supplemental jurisdiction. *See Stone v. Pepmeyer*, No. 07-CV-1198, 2010 WL 11553002, at *3 (C.D. Ill. Oct. 18, 2010) (holding that the ruling in *Luncsford* "is directly contrary to the Supreme Court precedent . . . which holds that supplemental jurisdiction does not override Eleventh Amendment immunity and a State's waiver in its own courts does not amount to waiver of Eleventh Amendment immunity."); *Sundberg v. Nebraska*, No. 8:09CV228, 2009 WL 2948559, at *2 (D. Neb. Sept. 11, 2009) (stating that "[*Luncsford*] is inconsistent with the Supreme Court's holding in *Raygor* [and] *Pennhurst State School*" and that "*Luncsford* is also inconsistent with . . . [the] determination . . . that . . . § 1367 cannot displace the Eleventh Amendment's explicit limitations on federal jurisdiction.") (internal citations omitted).

In light of the foregoing cases, the Court must construe the scope of the State's waiver of sovereign immunity in the ITCA in favor of the State. The ITCA provides specifically for "exclusive jurisdiction" in Iowa state courts and makes no mention of an intent to waive federal sovereign immunity. IOWA CODE § 669.4(1). The State has not consented to suit in this Court. The supplemental jurisdiction Congress provided the Court under Section 1367 does not include unmistakably clear language that Congress also intended to abrogate the State's Eleventh Amendment sovereign immunity. Thus, neither of the exceptions to the State's Eleventh Amendment sovereign immunity apply to Counts II-IV, and this Court does not have subject matter jurisdiction over Counts II-

IV in the complaint. Defendants' motion is **granted,** and **Counts II-IV are dismissed without prejudice**.[3]

### IV. CONCLUSION

For the reasons set forth above, defendant's Partial Motion to Dismiss is **granted**, and Counts II-IV of plaintiffs' Second Amended Complaint are **dismissed without prejudice**.

**IT IS SO ORDERED** this 3rd day of October, 2019.

_____
C.J. Williams
United States District Judge
Northern District of Iowa

---

[3] Dismissal for lack of subject matter jurisdiction it without prejudice. *Murray v. United States*, 686 F.2d 1320, 1327 n.14 (8th Cir. 1982) (dismissing without prejudice and stating that "[w]here a motion to dismiss for lack of subject matter jurisdiction is granted on grounds of sovereign immunity, the court is left without power to render judgment on the merits of the case").